IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM G. ALLEN ) | |
| ) | |
| v. ) | No. 3:12-00242 |
| ) | JUDGE CAMPBELL |
| RONALD COLSON, WARDEN ) | |

MEMORANDUM

I. Introduction

Pending before the Court are Petitioner's Motion For Summary Judgment And Entitlement To Habeas Corpus Relief (Docket No. 83); Respondent's Motion For Waiver Of M.D. Tenn. Local Rule 56.01(b) (Docket No. 88); Respondent's Response To Petitioner's Motion for Summary Judgment And Respondent's Cross-Motion For Summary Judgment (Docket No. 89); and Petitioner's Reply (Docket No. 91).

For the reasons set forth herein, Petitioner's Motion For Summary Judgment And Entitlement To Habeas Corpus Relief (Docket No. 83) is DENIED, and Respondent's Cross-Motion For Summary Judgment (Docket No. 89) is GRANTED. Respondent's Motion For Waiver Of M.D. Tenn. Local Rule 56.01(b) (Docket No. 88) is also GRANTED.

II. Procedural Background

In 1968, the Petitioner was indicted for the murders of two Davidson County police officers, Charles Wayne Thomasson and Thomas E. Johnson. Allen v. State, 2011 WL 1601587, at *1 (Tenn. Crim. App. April 26, 2011). The two murder counts were tried separately. Id. In December, 1968, the Petitioner was tried and convicted of the first degree murder of Officer Thomasson, and received a sentence of 99 years. Id. This Section 2255 action concerns the

conviction and sentence for the murder of Officer Thomasson.

The conviction was affirmed by the Tennessee Court of Criminal Appeals. Canady v. State, 3 Tenn. Crim. App. 337, 461 S.W.2d 53, 64 (Tenn. Crim. App. 1970). The Tennessee Supreme Court and the United States Supreme Court denied certiorari. Allen v. State, supra, at *2. The Petitioner then filed a petition for habeas corpus in federal district court, which was dismissed on November 24, 1971. Id. (Docket No. 41-23, at 18-23).

In December, 1971, the Petitioner filed a post-conviction petition in state court, which was denied after a hearing. (Docket No. 42-9, at 33, 32-47); Allen v. State, supra, at *2. On February 1, 1973, the Tennessee Court of Criminal Appeals affirmed the post-conviction court's decision. Id. The Tennessee Supreme denied certiorari on June 4, 1973. (Docket No. 41-26, at 4).

Subsequently, in 1973, the Petitioner filed a second petition for writ of habeas corpus in federal district court, which was denied. (Docket No. 41-26). On appeal, the Sixth Circuit affirmed in an opinion issued on April 30, 1974. (Docket No. 41-30, at 4-5).

The Petitioner escaped state custody in 1974 and remained at large until he was recaptured in 1986. Allen v. State, supra, at *3.[1]

On July 22, 1989, the Petitioner filed his second state post-conviction petition, which was summarily dismissed without a hearing on February 21, 1990. Allen v. State, supra, at *3;

---

[1] In 1986, a Davidson County grand jury issued a superseding indictment charging the Petitioner with Officer Johnson's murder. Allen v. State, supra, at *3, n. 2. In 1989, the Petitioner was tried and convicted of the first degree murder of Officer Johnson, and sentenced to 78 years of imprisonment to be served consecutively to the 99-year sentence he received for Officer Thomasson's murder. Id. The 78-year sentence was subsequently converted to a life sentence. Allen v. State, 2004 WL 1908809 (Tenn. Crim. App. Aug. 25, 2004)(Remanding case to trial court for entry of life sentence).

(Docket Nos. 42-1; 42-11, at 72). The Tennessee Court of Criminal Appeals affirmed the dismissal. Allen v. State of Tennessee, 1991 WL 181059 (Tenn. Crim. App. September 17, 1991); (Docket No. 42-4, at 2). On June 1, 1993, the Tennessee Supreme Court reversed the summary dismissal and remanded the case to permit the Petitioner to amend his petition. Allen v. State, 854 S.W.2d 873 (Tenn. 1993); (Docket No. 42-8, at 2).

In February, 1994, on remand of the second post-conviction petition, the Petitioner refiled his petition, and amended it three times. (Docket No. 42-11, at 89, 165, 180, 209). The court held a "waiver" hearing on May 15, 1995, during which an issue arose regarding a possible conflict of interest on the part of Petitioner's counsel. (Docket No. 42-12, at 2-66). The post-conviction court subsequently appointed new counsel for the Petitioner, and the case was removed from the active docket subject to reactivation by Petitioner's new counsel. Allen v. State, supra, at *3. In November, 2001, through a third attorney, the Petitioner filed a consolidated petition for post-conviction relief. Id., at *4; (Docket No. 42-9, at 4).

On April 3, 2007, the court granted the Petitioner's motion to modify his sentence to one of life imprisonment, which the State conceded was appropriate, and entered an Amended Judgment reflecting the change. (Docket Nos. 42-9, at 48, 50). The Order further provided that the Petitioner "consents to the imposition of a life sentence without waiving his right or conceding the constitutionality of the order that the 99 year sentence should be converted to a life sentence." (Id.) The Petitioner's position "is that he could only be sentenced to the lesser included offense of Second Degree Murder, and a sentence of 20 years was the maximum allowed according to law at the time of the offense." (Id.)

After holding two evidentiary hearings, the court entered an order, on September 28,

2009, denying relief on Petitioner's claims. (Docket Nos. 42-9, at 67-74; 42-13, 42-14). The Tennessee Court of Criminal Appeals affirmed the lower court's judgment, on April 26, 2011. Allen v. State, supra, at *5-9; (Docket No. 42-19). On August 25, 2011, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. Id.

Petitioner filed his initial petition for writ of habeas corpus in this case on March 5, 2012, and subsequently filed amendments to the Petition (Docket Nos. 1, 24, 53). In his Second Amended Petition (Docket No. 53), the Petitioner raised five claims. The parties sought partial summary judgment on Petitioner's grand jury discrimination claim, and the Court determined that the claim was "second or successive." (Docket Nos. 54, 55). The Court ordered the Petitioner to amend his petition by omitting the grand jury discrimination claim, or the case would be transferred to the Sixth Circuit Court of Appeals for consideration as a second or successive petition. (Id.) When the Petitioner failed to file such an amendment, the Court transferred this case to the appeals court. (Docket No. 63).

The Sixth Circuit subsequently determined that, with the exception of the claim regarding the imposition of his life sentence, the Petitioner's claims were second or successive, and the appeals court denied permission to file those claims. (Docket No. 73). The appeals court remanded the claim challenging the imposition of the life sentence. (Id.) That claim is the subject of the parties' pending motions.

III.  Analysis

A.  Petitioner's claim

Petitioner argues that the imposition of the life sentence violates his due process rights under the Fourteenth Amendment because: (1) a term of life imprisonment was not an available

4

punishment for the Petitioner's conviction at the time it was imposed; (2) the court imposing the sentence denied the Petitioner the sentencing process to which he was entitled under state law; and (3) the court's imposition of the life sentence produced an impermissible *ex post facto* effect.

B.  Tennessee murder statutes

The Petitioner has filed a Statement Of Material Facts and supporting exhibits relating to the history of legislation imposing punishment for first degree murder in Tennessee. (Docket No. 84). The Respondent has not contested the Petitioner's discussion of that history.

In 1915, the Tennessee General Assembly enacted Chapter 181 of the Public Acts of 1915, which abolished the death penalty and substituted a term of life imprisonment for all crimes except rape and offenses committed by convicts sentenced to life imprisonment. (Docket No. 84-1). In 1917 and 1919, the General Assembly repealed this law. (Docket Nos. 84-2, 84-3). Later in 1919, the General Assembly enacted Chapter 5 of the Public Acts of 1919, which provided that the punishment for a first-degree murder conviction was presumed to be death, but the jury could fix the punishment for a term of life or any period of time over 20 years. (Docket No. 84-4). Chapter 5 also expressly repealed Chapter 181. (Id.)

At Petitioner's trial in 1968, the jury sentenced him to a term of 99 years imprisonment based on the 1919 statute. (Docket No. 84, at ¶ 5).

In 1979, the Tennessee Supreme Court held in Miller v. State, 584 S.W.2d 758 (Tenn. 1979) that because the 1919 statute was unconstitutional in its entirety, "the legally effective punishment for first degree murder on the date of the crime [April 7, 1976] . . . was life imprisonment." Id., at 762, 764.

As noted above, during post-conviction proceedings in 2007, the Davidson County

5

Criminal Court granted the Petitioner's motion to modify his sentence to one of life imprisonment, which the State conceded was appropriate, and entered an Amended Judgment reflecting the change. (Docket Nos. 42-9, at 48, 50).

C. Tennessee courts' consideration of Petitioner's claim

Petitioner's claim was addressed by the Tennessee Court of Criminal Appeals in its consideration of Petitioner's most recent post-conviction petition:

> The Petitioner contends that his sentence is voidable because no constitutionally valid sentencing provision for first-degree murder existed at the time he was sentenced. He argues that, as a consequence, the only valid punishment that may be imposed upon him is the 1919 Act's second degree murder punishment statute, which Miller did not find unconstitutional. Miller v. State, 584 S.W.2d 758 (Tenn.1979). The State responds that this Court is bound by the Tennessee Supreme Court's holding, in Miller v. State, that the 1915 Sentencing Act was in effect when the Defendant was sentenced.
>
> In 1968, when this offense was committed, the statute that prescribed the punishment for first degree premeditated number (sic) authorized a sentence of death, life imprisonment, or a term over twenty years. T.C.A. § 39–2405. The Petitioner was convicted in Officer Thomasson's death and sentenced to a term of ninety-nine years. Canady v. State, 3 Tenn.Crim.App. 337, 461 S.W.2d 53, 55-56 (Tenn.Crim.App.1970). In 1973, the Tennessee General Assembly repealed the existing penalty provisions for first degree murder and enacted a new version of section 39–2405. The Tennessee Supreme Court, however, struck down the 1973 Act because it embraced more than one subject and was broader than its title. State v. Hailey, 505 S.W.2d 712, 715 (Tenn.1974). In response the General Assembly enacted Chapter 462 of the Public Acts of 1975, which provided that all person convicted of first degree murder would receive the death penalty. In 1977, the Tennessee Supreme Court declared that this provision, too, was unconstitutional and explained that its ruling revived the non-capital sentencing provisions of the 1919 Act, which allowed a jury to sentence a person convicted of first degree murder to life imprisonment or some other period of imprisonment over twenty years. Collins v. State, 550 S.W.2d 643 (Tenn.1977). In 1979, however, the Tennessee Supreme Court overruled Collins, thereby reviving the 1915 Act prescribing the punishment for first degree murder. Miller, 584 S.W.2d at 758. The court in Miller explained that its holding had the effect of reviving the 1915 Act, which provided a mandatory sentence of life imprisonment for all persons convicted of first degree murder. Id. at 762.

> The Petitioner's contention that no constitutionally valid punishment for first degree murder existed in 1968 is based upon the fact that the General Assembly expressly repealed Chapter 181 of the 1915 Act four days before it enacted the 1919 first-degree punishment statutes, which were subsequently found to be unconstitutional in <u>Miller</u>. <u>See</u> 1919 Tenn. Pub. Acts, Ch. 4; <u>State v. Bomer</u>, 209 Tenn. 567, 354 S.W.2d 763, 766 (1962); <u>Smith v. Bomar</u>, 212 Tenn. 149, 368 S.W.2d 748, 750-51. He argues that, because a repealed act may only be re-enacted by 'positive re-enactment in constitutional form,' and no such legislative action has taken place, the 1915 Act has never been re-enacted. Further, he contends that, because the 'saving statute' of the Tennessee Code provides for the 'revival' only of the statute existing immediately before the enactment of the statute found unconstitutional, the saving statute did not revive the repealed 1915 Act when the <u>Miller</u> court found the 1919 Act unconstitutional. As a consequence, he argues, no constitutional first degree murder punishment statute existed in 1968. He argues that, given the separation of powers doctrine, the Supreme Court overstepped its jurisdiction when it attempted to revive the 1915 Act in <u>Miller</u>.
>
> The Petitioner supports his argument with a well reasoned analysis and extensive citation to authority. We, however, are constrained by the Tennessee Supreme Court's holding in <u>Miller</u> that the first degree murder provisions of the 1915 Act apply to offenses, such as the present one, committed in 1968. <u>Wallace v. State</u>, 121 S.W.3d 652, 656 (Tenn.2003); <u>Nichols v. State</u>, 90 S.W.3d 576, 586 (Tenn.2002). The Petitioner is not entitled to relief on this issue.

<u>Allen v. State</u>, <u>supra</u>, at *9-10.

D. <u>Application of AEDPA</u>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the Court's review of Petitioner's clam. Under AEDPA, a habeas petition shall not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . ." 28 U.S.C. § 2254(d).

The Petitioner argues that the Tennessee Court of Criminal Appeals did not adjudicate his claim "on the merits" under AEDPA because the court "simply concluded it was bound by <u>Miller</u>

7

and could not therefore grant Mr. Allen relief." (Docket No. 85, at 9). That the state court determined it was bound by precedent, however, does not mean its adjudication was not "on the merits." In <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that a state court order that summarily rejects a claim without discussion is presumed to be an adjudication "on the merits" under AEDPA. <u>See</u> <u>also</u> <u>Werth v. Bell</u>, 692 F.3d 486 (6th Cir. 2012). Logic distates that if a decision with no discussion is "on the merits," a decision explaining that the court is bound by *stare decisis* clearly meets that standard. As the state court's decision was "on the merits," this Court must determine whether the state court's decision was "contrary to" or "involved an unreasonable application of clearly established Federal law."

In making that determination, the Sixth Circuit has explained that a state court decision is "contrary to" a clearly established federal law if it applies a rule that contradicts Supreme Court law in the area, or if it arrives at a different result from Supreme Court precedent based on materially indistinguishable facts. <u>Stewart v. Erwin</u>, 503 F.3d 488, 493-94 (6th Cir. 2007)(citing <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. <u>Id</u>. (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003)). "Unreasonable application" requires more than an incorrect or erroneous decision; rather, the decision must have been "objectively unreasonable." <u>Id.</u>

"Clearly established federal law" is the law set forth by the Supreme Court at the time the state court rendered its decision, though decisions of lower federal courts may be instructive. <u>Id.</u>

The state court need not cite Supreme Court cases, however, as long as neither the reasoning nor the result contradicts them. Id. (citing Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002). Where a state court does not articulate the reasons for its decision, the court is to "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id., at 494 (quoting Harris v. Stovall, 212 F.3d 940, 943 (6th Cir.2000)).

The Petitioner argues that the state court's decision was contrary to, and an unreasonable application of, clearly established law that: (1) a person convicted of a crime is eligible for, and the court may impose, only those punishments that are authorized by statute for his offense, based on Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); (2) a defendant has a substantial and legitimate expectation that the State will deprive him of his liberty only in accordance with established State procedures, and the State violates a defendant's rights when it restricts his liberty without following those procedures, based on Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 343 (1980); and (3) the Fourteenth Amendment limits a State court's authority to impose by judicial interpretation a result in derogation of *ex post facto* guarantees, based on Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

As to the first argument, the Petitioner essentially contends that the Tennessee Supreme Court erred in concluding in Miller that the 1915 statute provided an available punishment for murder prior to 1977 because the 1915 statute had been expressly repealed before Chapter 5

9

purported to replace it in 1919. That error, according to the Petitioner, violates his due process rights as recognized in Chapman v. United States, supra.

In Chapman, the Supreme Court held that the federal drug trafficking statute requires that the weight of the carrier medium of a drug be included when determining the appropriate sentence. On the specific page of the case cited by Petitioner, the Court explains that a person who has been convicted "is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual," and "as long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." 500 U.S. at 465.

The Petitioner does not argue that the state court's decision here resulted in cruel and unusual punishment, or that it made an arbitrary distinction. Instead, the Petitioner argues that his life sentence was not "authorized" under Tennessee law, and is therefore, unconstitutional. In essence, the Petitioner disagrees with the Miller court's determination that the 1915 statute was a prior valid act that could be revived when the 1919 Act was held to be unconstitutional. In so finding, Petitioner argues, the state's judicial branch usurped the authority of the state's legislative branch. That the Petitioner disagrees with the state court's interpretation of state law on this issue, however, does not establish that the state violated "clearly established" federal due process guaranties. Petitioner has not shown that the state did not have the authority under *federal law* to impose a life sentence on individuals convicted of first degree murder. Accordingly, the Petitioner has not established that the Tennessee Court of Criminal Appeals decision applying Miller to his case resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

Petitioner relies on Hicks v. Oklahoma to support his second argument – that he has a liberty interest in being sentenced only in accordance with established State procedures, and the State deprived him of that interest by imposing the life sentence. In Hicks, the Supreme Court held that a state statute requiring jury sentencing created a liberty interest, which was denied without due process when the trial judge instructed the jury that they were required to impose a sentence of 40 years pursuant to a statute that was later declared unconstitutional, and the appellate court failed to remand for resentencing. In reaching its decision, the Court rejected the state appellate court's conclusion that the defendant was not prejudiced because the 40-year sentence was within the range of punishment that could have been imposed under the appropriate statute. 447 U.S. at 346. The Court explained that when a statute provides for the imposition of a sentence in the discretion of a trial jury, which was conceded by the state, the defendant "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion. . . " Id.

In this case, the Petitioner does not argue that Tennessee requires that his sentence be imposed by a jury as in Hicks. Rather, Petitioner argues that Tennessee law entitled him to receive a sentence provided in a statute that had not been repealed by the legislature, and because, in his view, a life sentence did not exist as an available punishment because of that repeal, the state courts violated his due process rights by imposing such a sentence.

Unlike the Hicks case, however, the Respondent here does not concede that a life sentence was not an available punishment for the Petitioner under state law. Indeed, Tennessee's highest appellate court in Miller has ruled that such a sentence was available for defendants similarly situated to the Petitioner. Under these circumstances, the Petitioner's claim to a liberty

interest in his own interpretation of Tennessee law is unavailing. Accordingly, the Petitioner has not shown that the Tennessee Court of Criminal Appeals decision applying Miller to his case resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

Finally, the Petitioner argues that the state court's decision upholding the imposition of the life sentence violates *ex post facto* guaranties, based on Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). In Bouie, the Supreme Court held that a state court's unforeseeable and indefensible interpretation retroactively expanding a state criminal statute violates fair warning and *ex post facto* guaranties.

In Miller v. Florida, the Court held that a state trial court violated *ex post facto* guaranties when it sentenced the petitioner under Florida's new sentencing guidelines, which yielded a higher sentencing range than the guidelines in place at the time of his crime. In reaching its decision, the Court explained that to establish an *ex post facto* violation, "two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" 482 U.S. at 430 (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1987)).

The Petitioner contends that by deciding that the statute in effect at the time of his crime was the 1915 statute requiring a mandatory life sentence, the Miller court "repealed" the more lenient 1919 statute, and consequently, produced an *ex post facto* result in violation of the Fourteenth Amendment.

To meet the first requirement set forth in Miller v. Florida, the Petitioner must show that

12

the decision to apply the 1915 statute to defendants similarly situated to the Petitioner, who committed his crime in 1968, resulted in a retroactive application of a new, stricter law. Unlike the situation in Miller v. Florida, however, the law applied to the Petitioner was not enacted after he committed the offense, then retroactively applied to yield a higher sentence.[2] As the Petitioner has not met this first element, he cannot establish that the Tennessee Court of Criminal Appeals decision applying Miller to his case resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

IV. Conclusion

For the reasons set forth herein, Petitioner's Motion For Summary Judgment And Entitlement To Habeas Corpus Relief (Docket No. 83) is denied, and Respondent's Cross-Motion For Summary Judgment (Docket No. 89) is granted.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[2] As to the second element, Petitioner contends that changing his 99-year sentence to a life sentence disadvantages him because a 99-year sentence has an expiration date during his lifetime, with "good time" and "honor time" credits, whereas a life sentence does not expire until he dies. Petitioner also points out that the 99-year sentence was a discretionary sentence and the life sentence is mandatory. The Respondent argues, on the other hand, that modification of a 99-year sentence to a life sentence may practically result in a shorter sentence because parole eligibility with a life sentence is earlier than with a 99-year sentence. See Robert Irwin Gwin v. State, 1997 WL 627632 (Tenn. Crim. App. Oct. 13, 1997), *rev'd on other grounds* Taylor v. State, 995 S.W.2d 78 (Tenn. 1999)(Modifying 100-year sentence to life sentence has the effect of reducing the amount of time defendant has to serve before he is eligible for parole); Harris Percy Wynn v. State, 1993 WL 153198 (Tenn. Crim. App. May 12, 1993)(same). The Court need not decide this issue, however, as Petitioner has failed to show that the statute mandating the life sentence was applied as punishment for a crime committed prior to its enactment.