# IN THE UNITED STATES DISTRICT COURT FOR
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM G. ALLEN, | ) | |
| | ) | |
|    Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 3:12-cv-00242 |
| | ) | |
| BRUCE WESTBROOKS, Warden, | ) | JUDGE CAMPBELL |
| | ) | |
|    Respondent. | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court is Petitioner's Supplemental Brief on Grand Jury Discrimination Claim (Doc. No. 110); Respondent's Response brief (Doc. No. 113); and Petitioner's Reply (Doc. No. 114). For the reasons set forth herein, Petitioner's grand jury discrimination claim is **DENIED.**

### II. Procedural Background

In a previous opinion, now-retired Judge Todd J. Campbell described the extensive procedural history in this case:

> In March, 1968, the Petitioner was indicted for the murders of two Davidson County police officers, Charles Wayne Thomasson and Thomas E. Johnson. Allen v. State, 2011 WL 1601587, at *1 (Tenn. Crim. App. April 26, 2011). The two murder counts were tried separately. Id. In December, 1968, the Petitioner was tried and convicted of the first degree murder of Officer Thomasson, and received a sentence of 99 years. Id. Prior to trial, Petitioner's trial counsel filed a "plea in abatement" seeking dismissal of the indictment based on a challenge, on equal protection and due process grounds, to the method used to select the grand jurors who indicted him. Id., at *2. Specifically, the Petitioner argued that the method used to select grand jurors resulted in a grand jury consisting of a lower percentage of blacks than were represented in the population of Davidson County. Id. The parties stipulated to certain demographic

information regarding the grand jurors and the population of Davidson County. Id. The trial court denied the plea in abatement. Id.

The Petitioner raised the claim on appeal, but it was rejected and the conviction affirmed by the Tennessee Court of Criminal Appeals. Canady v. State, 3 Tenn. Crim. App. 337, 461 S.W.2d 53, 64 (Tenn. Crim. App. 1970). The Tennessee Supreme Court and the United States Supreme Court denied certiorari. Allen v. State, supra, at *2.

The Petitioner filed a petition for habeas corpus in federal district court, which was dismissed on November 24, 1971 for failure to present the grand jury discrimination claim to the state courts. Id. (Docket No. 41-23, at 18-23).

In December, 1971, the Petitioner filed a post-conviction petition in state court in which he raised the grand jury discrimination claim. (Docket No. 42-9, at 33). The court rejected the claim after holding a hearing which included testimony by Davidson County judges relating to the grand jury selection process. Allen v. State, supra, at *2; (Docket No. 42-9, at 32-47). On February 1, 1973, the Tennessee Court of Criminal Appeals affirmed the post-conviction court's decision. Id. The Tennessee Supreme denied certiorari on June 4, 1973. (Docket No. 41-26, at 4).

Subsequently, in 1973, the Petitioner filed a second petition for writ of habeas corpus in federal district court. (Docket No. 41-26, at 2-6). On September 24, 1973, the court engaged in an "independent examination" of the state court record and determined that although the grand juror selection method "did produce a statistical imbalance, in that the number of black grand jurors were substantially less than the percentage of the black population in Davidson County, the petitioner failed to establish that such statistical imbalance resulted from purposeful discrimination in the selection of the Grand Jury which indicted this petitioner." (Docket No. 41-26, at 12). On appeal, the Sixth Circuit affirmed in an opinion issued on April 30, 1974, concluding that "the finding of the district court that there was no purposeful discrimination in the selection of the grand jury which indicted petitioner is supported by substantial evidence and is, therefore, not clearly erroneous." (Docket No. 41-30, at 4-5).

The Petitioner escaped state custody in 1974 and remained at large until he was recaptured in 1986. Allen v. State, supra, at *3.[1]

---

[1] In 1986, a Davidson County grand jury issued a superseding indictment charging the Petitioner with Officer Johnson's murder. Allen v. State, supra, at *3, n. 2. In 1989, the Petitioner was tried and convicted of first degree murder and sentenced to 78 years of imprisonment to be served consecutively to the 99-year sentence he received for Officer Thomasson's murder. Id. The 78-year sentence was subsequently converted to a life sentence. Id.

On July 22, 1989, the Petitioner filed his second state post-conviction petition, which was later amended to include the grand jury discrimination claim. Allen v. State, supra, at *3; (Docket Nos. 42-1, at 4; 42-11, at 72). By Order entered February 21, 1990, the state trial court dismissed the second petition without a hearing, finding that the Petitioner's claims had been "previously determined" or "waived" under the applicable state statute governing post-conviction proceedings. Allen v. State, supra, at *3; (Docket No. 42-1, at 15-16). The Tennessee Court of Criminal Appeals affirmed the dismissal. Allen v. State of Tennessee, 1991 WL 181059 (Tenn. Crim. App. September 17, 1991); (Docket No. 42-4, at 2). On June 1, 1993, the Tennessee Supreme Court reversed the dismissal, holding that the State should have been required to file a response and the record of prior hearings, and that the court should have appointed counsel and allowed Petitioner to amend his petition. Allen v. State, 854 S.W.2d 873 (Tenn. 1993); (Docket No. 42-8, at 2).

While the Petitioner's second post-conviction petition was pending in the state appeals courts, the Sixth Circuit Court of Appeals issued its decision in Jefferson v. Morgan, 962 F.2d 1185, 1192 (6th Cir. 1992). The Sixth Circuit held in Jefferson that the petitioner in that case had established a prima facie case of race discrimination in the selection of the grand jury that indicted him, and that the State had not rebutted the prima facie case. The court ordered the State to re-indict the petitioner within 90 days or release him from custody. Id., at 1192.

In February, 1994, on remand of his second post-conviction petition, the Petitioner in this case re-filed his petition, and subsequently, filed three amendments to the petition. (Docket No. 42-11, at 89, 165, 180, 209). The court held a "waiver" hearing on May 15, 1995, during which an issue arose regarding a possible conflict of interest on the part of Petitioner's counsel. (Docket No. 42-12, at 2-66). The post-conviction court subsequently appointed new counsel for the Petitioner, and the case was removed from the active docket subject to reactivation by Petitioner's new counsel. Allen v. State, 2011 WL 1601587, at *3.

In November, 2001, through yet another attorney, the Petitioner filed a consolidated petition for post-conviction relief, which included the grand jury discrimination claim. Id., at *4; (Docket No. 42-9, at 4).

By an Agreed Order entered on March 29, 2007 (Docket No. 42-10, at 99) in that case, the parties agreed that "[t]he facts in Jefferson [v. Morgan, supra] relating to jury composition in Davidson County are . . . established for purposes of this case" and that "the Grand Jury which indicted James Thomas Jefferson also returned the indictment against William G. Allen, Petitioner." (Docket No. 42-10, at 99). On April 3, 2007, the court granted the Petitioner's motion to modify his sentence to one of life imprisonment, which the State conceded was appropriate, and entered an Amended Judgment reflecting the change. (Docket Nos. 42-9, at 48, 50).

3

> On November 20, 2007, the court held a hearing during which Petitioner's trial counsel testified. (Docket No. 42-13). On April 30, 2008, the court held another hearing, during which a witness from the original trial testified, and the parties addressed the merits of the grand jury discrimination claim. (Docket No. 42-14).
>
> On September 28, 2009, the court entered an order denying relief on Petitioner's claims with little discussion of the evidence presented by the Petitioner. (Docket No. 42-9, at 67-74). The Tennessee Court of Criminal Appeals affirmed the lower court's judgment, on April 26, 2011, holding that the grand jury discrimination claim was barred by the applicable state post-conviction statute because it had been "previously determined" by the state courts. The court pointed out that the Petitioner had received a full and fair hearing on his grand jury discrimination claim twice – at the plea in abatement proceedings and at the hearing on his first post-conviction petition. Allen v. State, 2011 WL 1601587, at *5-9; (Docket No. 42-19). The court rejected the Petitioner's argument that the stipulated facts of Jefferson v. Morgan warranted an exception to the bar on reconsideration of "previously determined" issues. Id. On August 25, 2011, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. Id.
>
> Petitioner filed his initial Petition for writ of habeas corpus in this case on March 5, 2012 (Docket No. 1) and it was assigned to the undersigned judge, forty-four years after the events in question. The Petitioner subsequently filed amendments to the Petition (Docket Nos. 24, 53). In his Second Amended Petition (Docket No. 53), the Petitioner raises one claim challenging his life sentence, and four claims challenging his conviction, including the grand jury discrimination claim. Id.

(Doc. No. 54, at 1-6). Judge Campbell went on to conclude that Petitioner's grand jury discrimination claim was a "second or successive" habeas petition under 28 U.S.C. § 2244(b), and transferred the case to the Sixth Circuit for authorization to proceed. (*Id.*)

On appeal, the Sixth Circuit initially denied Petitioner a certificate of appealability on the grand jury discrimination claim, but granted rehearing and issued a certificate of appealability after the court's decision in *King v. Morgan,* 807 F.3d 154 (6th Cir. 2015) was issued. *Allen v. Westbrooks,* 700 Fed. Appx. 406, 407 (6th Cir. 2017). The court ultimately determined that, based on *King,* Petitioner's claim was not a second or successive petition, and remanded the case to this Court to address the claim on the merits. *Id.*

III. Analysis

Respondent initially argues that Petitioner's claim should be rejected under the abuse-of-the-writ doctrine or the law-of-the-case doctrine. As Petitioner points out, however, the Sixth Circuit has suggested, arguably in *dicta*, that neither doctrine applies in cases like this one. *See Allen,* 700 Fed. App. at 410 ("To hold, as the Warden argues, that AEDPA places *King* claims at our threshold only for us to apply pre-AEDPA law and label them abusive, thus closing the door that AEDPA left open, would be at odds with the statute." (footnote omitted)); *King,* 807 F.3d at 160 ("And, yes, many tools for addressing repeat claims may not be available in this setting [in reviewing a second-in-time petition]: . . . the law-of-the-case doctrine likely would not apply due to the intervening judgment. . ."). Because the Court ultimately finds Petitioner's claim should be denied on the merits, it is unnecessary to consider these procedural arguments.

Both parties agree that review of Petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a habeas petition is not to be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" in Subsection (1) have independent meaning:

> A state court's decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this]

> precedent.' [*Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)]. A state court's decision is an 'unreasonable application' of clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.' *Id.* at 407–08, 120 S.Ct. 1495. 'The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.' *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). 'The state court's application of clearly established law must be objectively unreasonable.' *Id.*

*Loza v. Mitchell*, 766 F.3d 466, 473–74 (6th Cir. 2014). The petitioner must show "'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall,* 572 U.S. 415, 419-20, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) (quoting *Harrington v. Richter,* 562 U.S. 86, 131 S.CT. 770, 786-87, 178 L.Ed.2d 624 (2011)).

The phrase "clearly established Federal law" "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Id.* (quoting *Williams,* 529 U.S. at 412). "Compliance with § 2254(d) 'does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (quoting *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002)).

For purposes of applying Subsection (2), a state court's factual determination is not "unreasonable" "'merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Id.* (quoting *Wood v. Allen,* 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)). "Even if '[r]easonable minds reviewing the record' might disagree about a factual finding, 'on habeas review that does not suffice to supersede' the state court's

determination." *Id.* (quoting *Rice v. Collins,* 546 U.S. 333, 341–42, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)).

Petitioner focuses on the Tennessee Court of Criminal Appeals decision issued on February 1, 1973 as the relevant decision for Section 2254(d) analysis as that is the one identified by the Sixth Circuit in its most recent opinion in this case. *See* 700 Fed. Appx. at 407. In that decision, the state court concluded that the evidence offered by Petitioner in the trial court was inadequate to support his grand jury discrimination claim. (Doc. No. 32-2, at 97 of 150). According to the court, the facts presented to the trial court were as follows:

- Before May 1972, jurors and grand jurors in Davidson County were appointed pursuant to a Private Act. (*Id.,* at 101, 104). The pertinent provisions of the Act require a three-man board of jury commissioners be appointed by the judges of the circuit courts, and directs the commissioners to "select from the tax books, permanent registration lists, and poll books of the County, and from any other sources of information available to them, and write on pieces of paper, separately, the names of 10,000 upright and intelligent men of fair character and sound judgment, resident citizens of the County, who are eligible for jury service [as prescribed by law]," and those names constitute the jury list. (*Id.*) In selecting grand jurors, the judges of the criminal court "shall not be confined to the jury list . . . but may select the members of the grand jury from the County at large." (*Id.*) To be eligible, the individual must be a "householder or freeholder, and a registered voter, and must not have made any effort, directly or indirectly, to become a member of such grand jury." (*Id.*)

- The parties stipulated the petit jury panels were selected by a three-man jury commission, and the manner of selection was prescribed by statute. (*Id.,* at 100). Petitioner did not challenge the method of selecting petit juries. (*Id.*) The parties also agreed that substitutions for the grand jury are made from the petit jury list. (*Id.*).

- Criminal Court Judge John Draper testified he had appointed approximately 16 or 17 grand juries since October 1960. (*Id.,* at 101-02). In selecting grand jurors, Judge Draper tried to determine "a cross-section of the community, agewise, businesswise, colorwise, and in any other way." (*Id.*) Judge Draper selected persons "from his own knowledge or what might be found out from an investigation about them" and "considered many suggestions on whom to appoint some of which were rejected, others of which were accepted." (*Id.,* at 102).

- Criminal Court Judge Allen Cornelius testified that he selected his first grand jury panel in January 1969, and chose one panel each year thereafter. (*Id.,* at 102). Judge Cornelius testified that for the first three panels, he tried to choose a representative group by gender, employment, and geographic location. (*Id.,* at 102-03). For the next grand jury panel, he requested a list of 500 names from the jury commission and served those individuals with subpoenas. (*Id.*) Approximately, half of those were actually served. (*Id.*) The names of those who were served were placed in a box and the grand jury panel selected at random. (*Id.*)

- Judges Draper and Cornelius, as well as Criminal Court Judge Raymond Leathers, the postconviction trial judge, attempted to identify, apparently from memory, the number of black individuals who had served as grand jurors over a span of up to 13 years. (*Id.,* at 101-04 (Judge Leathers – 13 years; Judge Draper – 11 years; Judge

Cornelius – four years). The estimates did not include substitutions added to the original panels. (*Id.*)

- The Davidson County Criminal Court Clerk testified he received the list of grand jurors who had served from the judge who selected them, and did not know how they were selected. (*Id.,* at 98-99). The clerk's records did not contain any racial identification of grand jurors. (*Id.,* at 99). Grand jurors generally served for a four-month term. (*Id.*)

- The parties stipulated the Davidson County population from 1960 to 1970 was 80.1% white and 19.9% black (*Id.,* at 98).

- The appeals court noted that Petitioner attempted to submit a stipulation filed in another case: "This stipulation [from the other case] contained a list of 39 grand jury panels from the January term of 1952 to the May term of 1967, and included on the reverse side 13 names which counsel stated, 'Most all of whom I would recognize as negroes who served on these juries.'" (*Id.,* at 100). The trial court sustained the objection to admission of the stipulation because the list did not contain the names of grand jurors who served when substitutions were made. (*Id.*) The trial court permitted Petitioner to admit an exhibit from the other case, which the appeals court considered, showing a total of eight black individuals served on grand juries in Davidson County between September 1958 and March 1967. (*Id.,* at 101).

After a review of the evidence adduced in the trial court, the state appeals court considered the terms of the statutory provision governing the selection of grand jurors and found no constitutional defects: "The most painstaking and analytical review of this statute fails to disclose that its provisions violate in any way federal constitutional criteria insuring that the

9

selection of membership is free of racial bias, or is purposely unrepresentative." (*Id.,* at 105). Turning to the factual evidence presented by Petitioner, the court found the exhibits in the record seriously deficient in establishing a prima facie case of discrimination: "The names of those individuals marked on the exhibits to indicate their race could only have been so marked from the recollection of those individuals who examined the exhibits since there is no racial designation whatsoever subscribed on any of the Court records." (*Id.,* at 105).

The court was similarly unpersuaded that the testimony of the criminal court judges established "systematic exclusion" of blacks from the grand jury. (*Id.,* at 105). The court described the evidence as based on "mere speculation, or vague recollection of who had been appointed to serve on the grand juries in Davidson County over a period extending back to the year 1959." (*Id.*, at 105). The court found it "beyond the realm of reason to anticipate, expect or require judges who must in some manner dispose of an average of 500 to 800 cases in each term of court to recall by name, or racial designation, those persons functioning as grand jurors over the span of years involved . . ." (*Id.*)

The court concluded by holding the statute governing grand juror selection satisfied the criteria set forth in *Carter v. Jury Commission of Greene County, supra,* and by describing the record as "devoid of any showing of systematic exclusion of negroes from the grand jury as stricken down in any of the cases set forth in *Carter, supra,* (Note 8) which we have carefully reviewed." (*Id.,* at 106).[1]

---

[1] The cases cited in Footnote Eight are: *Arnold v. North Carolina*, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964); *Eubanks v. Louisiana*, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); *Reece v. Georgia*, 350 U.S. 85, 87, 76 S.Ct. 167, 169, 100 L.Ed. 77 (1955); *Cassell v. Texas*, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); *Hill v. Texas*, 316 U.S. 400, 404, 406, 62 S.Ct. 1159, 1161, 1162, 86 L.Ed. 1559 (1942); *Smith v. Texas*, 311 U.S. 128, 129 - 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 (1940); *Pierre v. Louisiana*, 306 U.S. 354, 356 - 358, 362, 59 S.Ct. 536, 537-38, 540, 83 L.Ed. 757 (1939); *Rogers v. Alabama*, 192 U.S. 226, 231, 24 S.Ct. 257,

Petitioner contends the state appeals court decision was contrary to clearly established Supreme Court precedent at the time the decision was issued, citing *Smith v. Texas,* 311 U.S. 128 (1940); *Hernandez v. Texas,* 347 U.S. 475 (1954); *Whitus v. Georgia,* 385 U.S. 545 (1967); *Jones v. Georgia,* 389 U.S. 24 (1967); *Sims v. Georgia,* 389 U.S. 404 (1967). A review of these cases, however, reveals that, in each one, the system used to select grand jurors involved a stage at which the race of each individual was made known to those making the selection, and culling of minority individuals took place thereafter. *Smith v. Texas,* 311 U.S. at 131 ("Nor could chance and accident have been responsible for the combination of circumstances under which a negro's name, when listed at all, almost invariably appeared as number 16, and under which number 16 was never called for service unless it proved impossible to obtain the required jurors from the first 15 names on the list . . . Both [commissioners] admitted that they did not select any negroes, although the subject was discussed . . ."); *Hernandez v. Texas,* 347 U.S. at 481 (persons of Mexican descent were identifiable on tax rolls through their Mexican or Latin American surnames); *Whitus v. Georgia,* 385 U.S. at 551 (jury list created from tax digest which listed taxpayers by race); *Jones v. Georgia,* 389 U.S. at 25 (Jury list created from "3 Tax Digests, two of which separated and identified as to race."); *Sims v. Georgia,* 389 U.S. at 407 ("The facts reveal that the grand and petit jury lists were drawn from the county tax digests which separately listed taxpayers by race in conformity with then existing Georgia law.").

The Supreme Court itself pointed out this common element in an opinion issued three years before the state court decision at issue here:

---

258, 48 L.Ed. 417 (1904); *Carter v. Texas,* 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839 (1900); *Bush v. Kentucky*, 107 U.S. 110, 121, 1 S.Ct. 625, 634, 27 L.Ed. 354 (1883).

*Carter*, 396 U.S. at 330 n. 8.

> Our decisions in *Avery v. Georgia*, 345 U.S. 559, 73 S. Ct. 891, 97 L.Ed. 1244, and *Whitus v. Georgia*, 385 U.S. 545, 87 S. Ct. 643, 17 L.Ed.2d 599, cannot aid the appellants. In *Avery* we reversed a judgment of conviction where the names of prospective petit jurors had been printed on differently colored tickets according to their race – white tickets for white people, and yellow tickets for Negroes. A state superior court judge drew the names from the jury box and handed them to the sheriff, who entrusted them to the court clerk for arranging the tickets and typing up the list of persons to be called to serve on the panel. We found that the use of the white and yellow tickets made it easier 'for those to discriminate who are of a mind to discriminate,' and that even if the judge had drawn the names without looking to see the color of the tickets, 'opportunity was available to resort to (discrimination) at other stages in the selection process.' 345 U.S. at 562, 73 S. Ct., at 893.
>
> *Whitus* involved a refinement of the process we had condemned in *Avery*. In *Whitus* the jury commissioners made up the jury list from which both traverse and grand jurors were selected by reference to the tax digest, which was segregated into sections – one with white sheets for white people and the other with yellow sheets for Negroes – and to an old jury list required by former law to be made up from the tax digest. We concluded that '(u)nder such a system the opportunity for discrimination was present,' and on the record before us we could not say that that opportunity 'was not resorted to by the commissioners.' 385 U.S., at 552, 87 S. Ct., at 647.
>
> In both *Avery* and *Whitus* we noted without comment the 'upright and intelligent' requirement for jury membership. 385 U.S., at 552, 87 S. Ct., at 647; 345 U.S., at 562, 73 S. Ct., at 892. In *Avery* we expressly commented that Georgia law did not authorize the use of the potentially discriminatory process under review. 345 U.S., at 562, 73 S. Ct., at 892. In both cases we struck down the white-and-yellow system, however varied in design, because of the obvious danger of abuse. *See Williams v. Georgia*, 349 U.S. 375, 382, 75 S. Ct. 814, 819, 99 L.Ed. 1161. We dealt in both cases with <u>a physical, even mechanical, aspect of the jury-selection process that could have no conceivable purpose or effect other than to enable those disposed to discriminate against Negroes solely on the basis of their race</u>. It is evident that the challenged provisions now before us contain no such defect. The appellants cannot contend that the present requirements serve no rational function other than to afford an opportunity to state officials to discriminate against Negroes if they desire to do so.

*Turner v. Fouche,* 396 U.S. 346, 355 n. 13, 90 S. Ct. 532, 24 L. Ed. 2d 567 (1970) (emphasis added). The Court went on to find the grand jury selection system in Taliaferro County, Georgia, as applied by local commissioners, included a stage at which potential grand jurors were classified by race. 396 U.S. at 357-58. The Court concluded that the subsequent stage of

selection, which resulted in the elimination of 171 of 178 black jurors, established a prima facie case of jury discrimination. *Id.*

The point made in *Turner* was confirmed in an opinion issued less than a year before the state court decision here:

> This Court has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors. The progressive decimation of potential Negro grand jurors is indeed striking here, <u>but we do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral.</u> The racial designation on both the questionnaire and the information card provided a clear and easy opportunity for racial discrimination. At two crucial steps in the selection process, when the number of returned questionnaires was reduced to 2,000 and when the final selection of the 400 names was made, these racial identifications were visible on the forms used by the jury commissioners, although there is no evidence that the commissioners consciously selected by race.

*Alexander v. Louisiana,* 405 U.S. 625, 630, 92 S. Ct. 1221, 31 L.Ed.2d 536 (1972) (emphasis added); s*ee also Carter v. Jury Commission of Greene County, supra* (finding prima facie case of discriminatory selection of jury commissioners not established by statistics over many years showing failure by governor to appoint blacks as commissioners).

It was not until four years after the state court decision was issued in this case that the Supreme Court explicitly adopted the method of proof called the "rule of exclusion:"

> The idea behind the rule of exclusion is not at all complex. If a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors entered into the selection process.

*Castaneda v. Partida*, 430 U.S. 482, 495 n. 13, 97 S. Ct. 1272, 1280, 51 L. Ed. 2d 498 (1977).[2]

---

[2] This method of proof was applied by the Sixth Circuit in concluding the petitioner had established a prima facie case of discrimination in the selection of grand jurors in *Jefferson v. Morgan,* 962 F.2d at1188-89, issued some 20 years after the state court decision at issue here.

The Court is not persuaded the state court decision denying Plaintiff's discrimination claim contradicted the governing law set forth in Supreme Court precedent as it existed when the decision was issued. It was not at all clear at the time the decision was issued that reliance on statistics, in the absence of a stage at which minority individuals were identified and culled, was sufficient to establish a prima facie case of discrimination. Indeed, in this Court's view, Petitioner's unreliable statistical evidence was the primary basis upon which the state court rejected his claim. The court viewed the evidence offered by the petitioner as deficient because official court records did not contain racial designations, and the evidence was otherwise based on the vague recollection of a few individuals. (Doc. No. 32-2, at 105).[3] Such a failure of proof distinguishes Petitioner's case from prior Supreme Court decisions. Accordingly, the Court is not persuaded the state court decision was "contrary to" or an "unreasonable application" of, clearly established Supreme Court law at the time it was issued.

## IV. Conclusion

For the reasons set forth herein, Petitioner's grand jury discrimination claim is denied. Should Petitioner give timely notice of an appeal from this Memorandum and accompanying Order, such notice shall be treated as an application for a certificate of appealability. 28 U.S.C. § 2253(c). The Court concludes Petitioner has made a substantial showing of the denial of a constitutional right as to his grand jury discrimination claim, and reasonable jurists could find the Court's assessment of the constitutional claim debatable. *See, e.g., Castro v. United States,* 310

---

[3] In that regard, the record before the state court apparently differs from that before the Sixth Circuit in *Jefferson, supra*. The evidence reviewed by the Sixth Circuit in *Jefferson* was presented during an evidentiary hearing in the federal district court, and according to the court, "established the racial composition of 26 grand juries [showing that] no more than 20 blacks served in the 338 positions available on the 26 grand juries." 962 F.2d at 1187. The petitioner's proof before the state courts in this case was not so definitive.

F.3d 900 (6th Cir. 2002). Accordingly, the Court will issue a certificate of appealability on that claim.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE